Scott Humphreys (SBN 298021)
humphreyss@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Mohammed N. Workicho (*pro hac vice
forthcoming*)
workichom@ballardspahr.com
**BALLARD SPAHR LLP**
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Defendant
UNIUNI LOGISTICS INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POINT2POINT GLOBAL, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>UNIUNI LOGISTICS INC., a California corporation,<br><br>        Defendant. | Case No. 2:26-CV-5065-SRM-MAR<br><br>**DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION**<br><br>**Hearing Date:    June 23, 2026**<br>**Time:              2:30 Pm** |

*Ballard Spahr LLP*
*2029 Century Park East, Suite 1400*
*Los Angeles, CA 90067-2915*
*Telephone: 424.204.4400*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................1

LEGAL STANDARDS .........................................................................................3

FACTUAL BACKGROUND ..................................................................................4

    A.    The Parties' Services Agreement................................................................4

    B.    P2P Repeatedly Refuses to Pay UniUni For Many Months. ...............6

    C.    UniUni has Continued to Work to Ensure that P2P's Packages are Available for Pick-Up by P2P or Delivery to End-Consumers. ...........................................................................................7

    D.    UniUni is Not "Unlawfully Soliciting" P2P Customers, and is Not Sharing Confidential Information or Trade Secrets......................9

    E.    The Court's Temporary Restraining Order........................................10

ARGUMENT.....................................................................................................10

    A.    P2P Is Not Likely To Succeed On the Merits.....................................12

        1.    P2P fails to show a likelihood of success on its breach of contract claim...............................................................12

        2.    P2P fails to show likelihood of success on its trade secret claims. ..............................................................................14

    B.    P2P Fails to Show Irreparable Harm. ..................................................17

    C.    The Equities Favor UniUni. ...................................................................19

    D.    A Preliminary Injunction Is Not In the Public Interest......................20

    E.    Alternatively, the Court Should Require P2P to Give Security as a Condition of Any Preliminary Injunction. ......................................20

CONCLUSION..................................................................................................22

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

---

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) ...................................................................15

*Asmoke USA, LLC v. YCY Int'l Logistics, Inc.*,
  No. SACV2300746CJCADSX, 2023 WL 3768655 (C.D. Cal. May
  1, 2023) ..................................................................................................................19

*Autodesk, Inc. v. ZWCAD Software Co.*,
  No. 14-cv-01498-EJD, 2015 WL 2265479 (N.D. Cal. May 13,
  2015) ......................................................................................................................15

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) ...............................................................................17

*Brown v. Grimes*,
  192 Cal. App. 4th 265 (2011) ................................................................................14

*Cisco Sys., Inc. v. Chung*,
  462 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................15

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ...............................................................................19

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...................................................................................4

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) ............................................................................3, 15

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) .............................................................................................2

*James River Ins. Co. v. Medolac Lab'ys*,
  290 F. Supp. 3d 956 (C.D. Cal. 2018) ...................................................................14

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ...............................................................................20

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

ii

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 9067-2915
Telephone: 424.204.4400

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ...................................................................... 19

*Las Vegas Sands, LLC v. Nehme*,
   632 F.3d 526 (9th Cir. 2011) ........................................................................ 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) .......................................................................... 4

*Munaf v. Geren*,
   553 U.S. 674 (2008) ........................................................................................ 4

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
   475 F. Supp. 2d 995 (C.D. Cal. 2007) .......................................................... 17

*Race Winning Brands, Inc. v. Gearhart*,
   No. SACV 22-1446-FWS-DFM, 2023 WL 4681539 (C.D. Cal. Apr.
   21, 2023) ....................................................................................................... 16

*Reno Air Racing Ass'n., Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ................................................................. 19, 20

*Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*,
   No. SACV 23-00982-CJC, 2023 WL 6373884 (C.D. Cal. Aug. 24,
   2023) ............................................................................................................. 17

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ................................................................... 4, 20

*Strategix, Ltd. v. Infocrossing W., Inc.*,
   142 Cal. App. 4th 1068 (2006) ....................................................................... 2

*Towery v. Brewer*,
   672 F.3d 650 (9th Cir. 2012) .......................................................................... 4

*Vendavo, Inc. v. Price f(x) AG*,
   No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ............. 4

*Wacker v. Hammerking Prods. Inc.*,
   608 F. Supp. 3d 947 (C.D. Cal. 2022) ........................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................... 4, 19

iii

*Yamout v. Scapa*,
   No. CV 24-8876-SVW-PDX, 2024 WL 5185324 (C.D. Cal. Oct. 22, 2024) ................................................................................................................ 19

**Statutes**

18 U.S.C. § 1836 ......................................................................................... 12, 14

Cal. Civ. Code § 3426, *et seq*. .................................................................... 12, 14

Cal. Bus. & Prof. Code § 16600(a) ..................................................................... 2

**Rules**

Fed. R. Civ. P. 65 ............................................................................................... 19

Fed. R. Civ. P. 65(c) ......................................................................................... 20

Fed. R. Civ. P. 65(d) ......................................................................................... 19

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Defendant UniUni Logistics Inc. ("UniUni") opposes Plaintiff Point2Point Global, LLC's ("P2P") Request for a Preliminary Injunction (the "Motion"). In light of the expedited schedule for briefing on the Motion, and the Court's Order on P2P's request for a temporary restraining order issued late afternoon Friday, June 12, 2026, *see* Dkt. 28, UniUni respectfully requests the opportunity to discuss the issues raised in the Motion with the Court at the hearing on June 23, 2026. Since the Motion was filed, there have been substantial developments that are most efficiently addressed at a live hearing before the Court.

## PRELIMINARY STATEMENT

To start, it is important to understand that this dispute started from one thing: ***P2P's refusal to pay UniUni*** at least $400,000 that was not subject to ***any*** dispute and was well past due under the parties' contract. Rather than pay UniUni what it owed and engage in discussions regarding the additional approximately $800,000 in fees owed to UniUni to which it purported to have objections, P2P decided to rush to the courthouse in a transparent attempt to distract from its own improper conduct and to control the narrative. UniUni intends to file its own counterclaims and a motion to dismiss against P2P in due course, which will demonstrate that it is P2P who is to blame for this entire dispute. P2P should not be permitted to obtain an improper litigation advantage by ignoring UniUni's attempts at a good faith resolution and being the first to the courthouse.

***First,*** as to the delivery of P2P packages, that issue is effectively moot. UniUni made so-called "Gateway Packages" located at UniUni's centralized warehouses readily available for pickup by P2P, and all of those packages have been picked up by P2P. "Downstream Packages" at local UniUni warehouses, or out for delivery with third party "Delivery Service Providers," have been delivered, other than a limited number of packages that were apparently lost, or are undeliverable due to no fault of UniUni. UniUni nonetheless is diligently working to ensure that all such packages are

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1

identified and delivered or returned to P2P.[1] In short, despite its explicit contractual right to suspend services based on P2P's failure to pay undisputed amounts owed to UniUni under the parties' agreement, UniUni is currently operating in good faith to deliver or return all packages to P2P.

**Second,** of critical importance is P2P's wholly improper request that "be restrained from ongoing unlawful solicitation of P2P's clients and prospective clients. P2P is not entitled to this injunctive relief, and the Court's temporary restraining order on this point must be vacated, for several reasons. To start, there has not been, and cannot be, any "unlawful solicitation" of P2P clients because the parties' contract does not contain any non-solicitation provisions (and UniUni would have rejected any such term had P2P attempted to include it). P2P cannot ask this Court to impose limitations that the parties' agreement, itself, does not impose. In California, by statute, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). This statute "applies to business contracts" and precludes enforcement of restraints of trade (like a non-solicitation provision) if it "harms competition more than it helps[.]" *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1149-50 (2020); *see also Strategix, Ltd. v. Infocrossing W., Inc.*, 142 Cal. App. 4th 1068, 1073-74 (2006) (reversing grant of preliminary injunction because non-solicitation covenants between seller of business and buyer were unenforceable). The only thing that could be prohibited would be the improper use of P2P's actual "confidential information" or "trade secrets" in communications with third parties. **But there is no protectible "confidential" or "trade secret" information here**, and, in any event, UniUni has not improperly used, or otherwise disclosed, information received from P2P, except to perform the contracted-for services on P2P's behalf.

---

[1] It is UniUni's understanding that P2P claims that certain packages are "unaccounted for," but UniUni disagrees. That issue will be resolved in this lawsuit, but does not permit imposition of an injunction.

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Indeed, the specific email cited by P2P in its Motion as a purported example of use of "confidential information" confirms there is no "confidential" or "trade secret" information being used in that communication. Dkt. 6-1 at 9-10.

Apart from self-serving descriptions, P2P has failed to show that any such protectible information exists. P2P claims, in broad, indeterminate language, that its "confidential information," or "trade secrets," include the "customer identities," "shipping guarantees," and "shipping rates." (Dkt. 6-1 at 21.) Such generalized categories of information cannot be the subject of injunctive relief, particularly with respect to the identities of P2P's customers, who are publicly known companies, many of which are well known e-commerce and online retailer entities, and when there is zero evidence that the identities of these customers are "confidential" within the delivery industry. Under Ninth Circuit law, P2P must first identify with specificity any "confidential" or "trade secret" information so the Court (and UniUni) can evaluate whether there is any such protectable information in the first instance. *See*, *e.g.*, *InteliClear, LLC v. ETC Glob. Holdings, Inc.,* 978 F.3d 653, 658 (9th Cir. 2020) (citations omitted). P2P has abjectly failed to do this (because it cannot do this).

To be clear, UniUni has not shared, and is not sharing, any of this supposed "confidential information" or "trade secrets" in communications with any known customers of P2P. However, as P2P requests (and as the Court's temporary restraining order now stands), the prohibitions regarding "solicitation" of customers and use of P2P's asserted "confidential information" are, on their face, overbroad, unclear, and threaten to upend UniUni's business. UniUni has multiple pre-existing business relationships with customers who might also be "P2P clients" or "prospective" clients, and UniUni cannot not be limited in continuing to provide services to such customers. In short, UniUni is not engaged in any "unlawful" solicitation and is not using any of P2P's supposed "confidential" or "trade secret" information.

## LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that may only be awarded

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

3

upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) likelihood of success on the merits, (2) likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Because preliminary injunctions are an "extraordinary and drastic remedy[,]" *Munaf v. Geren*, 553 U.S. 674, 689 (2008), the party seeking the injunction must present evidence sufficient to clearly carry its burden of persuasion on each requirement. *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (citations omitted).

In addition, when a party seeks a mandatory injunction—that is, an injunction requiring a party to take affirmative action, rather than to cease action—the movant's burden is "doubly demanding," and it must establish that "law and facts clearly favor [its] position, not simply that [it is] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Mandatory injunctions ordering parties to perform specific acts are "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted). In fact, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*

## FACTUAL BACKGROUND

### A.    The Parties' Services Agreement.

UniUni is a leading technology-enabled logistics company revolutionizing delivery services. Declaration of Kevin Wang ("Wang Decl.") ¶ 2. UniUni helps businesses streamline the shipping process while supporting scalable, tech-driven logistics solutions. *Id.* UniUni enables businesses to provide a superior online shipping experience, ensuring efficiency and customer satisfaction. *Id.* UniUni serves a variety of clients, from e-commerce platforms, to online retailers, and brands across

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

4

the United States and Canada. *Id.*

On December 30, 2024, UniUni and Point2Point entered into a Services Agreement (the "Agreement"), under which UniUni agreed to deliver packages to P2P's clients, end users, or other recipients ("Services"). Dkt. 1-1.

Under Section 1 of the Agreement, P2P agreed to cooperate with UniUni with respect to all matters contemplated by or within the scope of the Agreement, including providing all necessary documentation to allow UniUni to complete the Services, and performing all other acts reasonably required by UniUni in connection with the Services. *Id.* at Page 2. While the Agreement required UniUni to exercise the standard of care, skill, and diligence required by customarily accepted practices in the logistics and delivery industry, the Agreement did not guarantee that UniUni would deliver P2P's packages under a specific timeline, or that it would be responsible for delivery delays resulting from factors outside of its control. *Id.*; *see also* Wang Decl. ¶ 5. Indeed, the Agreement stated that UniUni specifically "reserve[d] the right in its absolute and sole discretion to decline any order of [P2P]." Dkt. 1-1 at Page 10-11 ("Exhibit A Description of Services").

Under Section 2 of the Agreement, P2P agreed to pay UniUni for the Services in accordance with the rates and fees set out in an applicable rate sheet. Dkt. 1-1 at Page 3. The Agreement contemplated that UniUni would invoice P2P within five (5) business days of the end of each week for all Services rendered during the week. *Id.* P2P must then pay UniUni's invoice within thirty (30) days. *Id.* P2P is also required to reimburse UniUni for all reasonable costs incurred in collecting late payments, including legal fees. *Id.* In addition, UniUni retained the right to adjust the fees it charges at any time, in its sole discretion, by providing thirty days' written notice to P2P. *Id.*

***Importantly***, Section 2 of the Agreement allowed UniUni to suspend Services if P2P fails to pay any "undisputed fees when due," and if that failure continues for ten (10) days following written notice to P2P. *Id.* Section 5 of the Agreement

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

5

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

authorizes UniUni to terminate the contract immediately if P2P "fails to pay any amount when due" and such failure continues for fourteen (14) days after UniUni provides written notice of the non-payment. *Id.*

### B.    P2P Repeatedly Refuses to Pay UniUni For Many Months.

Throughout the Agreement, UniUni maintained a high level of service to P2P, consistent with the standard of care, skill and diligence required by customarily accepted practices, and there were few disputes regarding such services or UniUni's fees. Wang Decl. ¶ 7. Starting in January 2026, however, P2P began to delay paying and dispute UniUni invoices that were due and owing. *Id.* For example, P2P began to accuse UniUni of service and billing errors, which allegedly resulted in delivery delays and failures to deliver. *Id.* For context, P2P shipped over 1.6 million packages with UniUni since entering into the Agreement on December 30, 2024. In the course of the parties' discussions since the start of this year regarding fees owed to UniUni, P2P disputed and made a specific claim regarding approximately 16,000 packages, for which UniUni approved and issued credits to P2P of approximately $345,166. Wang Decl. ¶ 18.

From February to April 2026, UniUni engaged in good faith communications with P2P to address any alleged issues with its service. *Id.* at ¶ 8, Ex. 1. UniUni informed P2P that any alleged delays in delivery were caused by external circumstances outside of its control (e.g. weather interruptions). *Id.* UniUni also clarified that P2P's allegation of delayed deliveries was based on inaccurate assumptions. *Id.* For example, P2P arrived at inaccurate delivery timelines by measuring transit time from package label creation to delivery, even though UniUni has no control over the period between label creation and when the parcel is handed over to UniUni's facilities. *Id.*

UniUni also requested that P2P provide supporting documentation (such as bills of lading), so that it could properly assess each specific shipment and evaluate P2P's accusation of delayed deliveries. *Id.* at ¶ 9, Ex. 1. P2P refused to provide such

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

6

documents, despite UniUni repeatedly explaining that UniUni cannot systematically evaluate whether P2P's allegations were accurate without such information. *Id.*

Not only did P2P refuse to adequately support its allegations, but it also flatly refused to pay a substantial amount of the money it owed to UniUni that was not the subject of a dispute or claim by P2P. *Id.* at ¶ 10, Ex. 2. On April 13, 2026, P2P owed UniUni over $1.2 million dollars. UniUni informed P2P that, while acknowledging P2P purported to dispute approximately $800,000 of the total outstanding amount, *at least $400,000 of what P2P owed UniUni was undisputed and had to be paid immediately.* *Id.* UniUni also informed P2P in writing that, without immediate payment of the amount owed, UniUni would suspend its services to P2P. *Id.* Despite receiving written notice of the undisputed amounts owed, and the potential suspension of services, P2P continued to refuse to pay what it owed under the Agreement. *Id.*

On April 30, 2026, UniUni sent P2P a letter providing notice that P2P had breached the Agreement by failing to pay UniUni's invoices when due. *Id.* at ¶ 11, Ex. 3. UniUni calculated that P2P owed UniUni $1,081,824.51 in past-due fees. In good faith, UniUni offered to reduce that amount by $345,166.24 for "approved claims" that had been disputed by P2P, for a net total amount due of $736,658.27. UniUni demanded that P2P pay that amount by May 1, 2026. *Id.* **To date, P2P has failed to make the required payments to UniUni**, including amounts due for subsequent invoices issued by UniUni. P2P currently owes UniUni approximately $1,959,267.82 for services UniUni has provided under the Agreement. Wang Decl. ¶ 12.

**C.      UniUni has Continued to Work to Ensure that P2P's Packages are Available for Pick-Up by P2P or Delivery to End-Consumers.**

Notwithstanding UniUni's contractual right to suspend services under the Agreement, and P2P's undisputed refusal to pay UniUni *any* amounts, UniUni nonetheless has been attempting in good faith to facilitate the pickup and delivery of all P2P packages tendered to UniUni. *Id.* at ¶ 13. The parties have generally used two

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

7

terms to describe the packages: "Gateway Packages" and "Downstream Packages." *Id*. "Gateway Packages" are (1) P2P packages that were received by UniUni and were located at various UniUni regional facilities, but were unprocessed for transfer to local UniUni distribution facilities, at which locations the packages would be turned over to third party "Delivery Service Providers" for handling individual deliveries; and (2) packages that UniUni processed at its regional facilities, but remained there for pickup by P2P following UniUni's suspension of Services. "Downstream Packages," by contrast, are packages that were processed by UniUni at its regional facilities, transferred to local warehouses, and have been delivered, or are out for delivery with Delivery Service Providers in the ordinary course. *Id*.

After providing notice of P2P's breach, UniUni continued to coordinate with P2P to have all of its "Gateway Packages" picked up by P2P, and to deliver, as soon as possible, the "Downstream Packages" to the end-consumers. *Id*. at ¶ 14.

**Gateway Packages:** As to the Gateway Packages, on several occasions in May 2026, UniUni provided P2P with simple instructions on how P2P should proceed to coordinate the immediate retrieval of the Gateway Packages, and provided two spreadsheets showing (1) the Gateway Packages that remain available for pickup; and (2) the local contact information to coordinate pickup. *Id*. at ¶ 15. Based on UniUni's records, as of the date of this filing, P2P has picked up all the Gateway Packages. *Id*. at ¶ 16.

**Downstream Packages:** As to the Downstream Packages, based on UniUni's records, as of the date of this filing, all the Downstream Packages have been delivered, except for approximately 1,066 packages that are categorized as lost or undeliverable, in the usual course. Wang Decl. ¶¶ 16-17. UniUni did not do anything to intentionally delay or slow the delivery of any of the Downstream Packages, and undertook reasonable efforts to have such packages delivered in accordance with UniUni's standard practices and procedures. *Id*. Consistent with its usual practices, UniUni is in the process of returning to P2P 352 of the 1,066 "Downstream Packages" marked

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

as undeliverable in UniUni's systems per UniUni's standard procedures. *Id.*

**API System:**  As part of its request for injunctive relief, P2P asks the Court to compel UniUni to continue to provide access to UniUni's package tracking software. Dkt. 6-1 at 14. This claim is meritless because, at all times, UniUni continued to provide P2P with access to the Application Programming Interface ("API") shipping network system for package tracking purposes, which remained fully active and operational. *Id.* at ¶ 17(b).

**D.    UniUni is Not "Unlawfully Soliciting" P2P Customers, and is Not Sharing Confidential Information or Trade Secrets.**

The Motion incorrectly claims that UniUni has been improperly soliciting P2P's clients and/or sharing P2P's confidential information and trade secrets. This is incorrect, both legally and factually. To start, the Agreement does not contain any non-competition or non-solicitation provisions that would prevent UniUni from contacting or soliciting the business of customers in UniUni or P2P's industry. Declaration of Sheila Berry ("Berry Decl.") at ¶¶ 3-4. To the extent that UniUni communicated with business that P2P claims are its customers in April or May 2026, UniUni has pre-existing business relationships with those the customers, or communicated with such customers prior to entered into the Agreement in December 2024. *Id.* ¶¶ 3, 6. Nothing in the Agreement prohibits those types of communications.

As to so-called "confidential information" or "trade secrets," UniUni never received any information from P2P that P2P designated and identified as being confidential or a trade secret, and UniUni did not, and does not understand that any information received from P2P was or is "confidential" or a "trade secret." *Id.* at ¶ 5. P2P did not inform UniUni, either verbally or in writing, that the information UniUni received from P2P was proprietary or confidential. *Id.* UniUni never used any of P2P's "shipping guarantees and shipping timeframes" when soliciting customers. *Id.* While P2P makes bald, unsupported allegations, UniUni has not unlawfully solicited clients or prospective clients in P2P or UniUni's industry. *Id.* ¶¶ 4-7. Specifically,

9

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

UniUni is not using any of P2P's information when soliciting customers or prospective customers. *Id.*

### E.     The Court's Temporary Restraining Order

On Friday, June 12, 2026, this Court issued an Order Granting Plaintiff's *Ex Parte* Temporary Restraining Order and issued an Order to Show Cause re: Preliminary Injunction. Dkt. 28. UniUni is complying with the Court's Order, and can confirm the following as of the date of this filing:

UniUni is not disclosing, using, accessing, distributing, or misappropriating any of P2P's information, except for the limited internal purpose of looking at the information to confirm that all Gateway Packages have been picked up by P2P, and that all Downstream Packages have been delivered.

UniUni is not unlawfully soliciting clients or prospective clients in P2P or UniUni's industry. Specifically, UniUni is not using any of P2P's information when soliciting customers or prospective customers.

As noted above, based on UniUni's records, as of the date of this filing, P2P has picked up all the Gateway Packages, and the Downstream Packages all have been delivered, except for approximately 1,066 that are considered undeliverable or lost.

At all times, P2P has had access to the Application Programming Interface (API) shipping network system for package tracking purposes, which has remained fully active and operational.

Berry Decl. ¶ 7; Wang Decl. ¶ 17.

## ARGUMENT

P2P seeks to enjoin UniUni from (1) disclosing, using, accessing, distributing, and misappropriating P2P's "confidential material, trade secrets, and proprietary information"; (2) "unlawful solicitation" of P2P's alleged clients and prospective clients; and (3) actual or threatened suspension or termination of service of P2P's package delivery. Dkt. 6-6 at 4-5. P2P also seeks to require UniUni to "comply with the terms of the parties' Agreement," and to continue to provide P2P access to

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

10

UniUni's Application Programming Interface. *Id.* There is no basis to grant any of these requests.

The simple fact is that P2P is in breach of its contractual obligations under the parties' contract, and it owes UniUni nearly $2 million in fees for the packages UniUni delivered on P2P's behalf. Starting in early 2026 and continuing to today, P2P has refused to pay UniUni what P2P owes for the delivery services that UniUni provided, despite repeated demands for payment, relying on a bad faith position that *no* payments are due because P2P disputes *all* amounts for all deliveries by UniUni. In other words, P2P now claims there is a dispute between the parties regarding every single delivery reflected in every outstanding invoice, so, according to P2P, it does not need to comply with its payment obligations. This is a bad faith, nonsensical position.

First, the parties' contract does not provide for such blanket objection, as P2P purports to assert; instead, there is a process reflected in the contract and the parties' course of conduct that, when an issue arises regarding specific deliveries, claims are submitted, reviewed, and, when necessary, credited to P2P. In that regard, and secondly, P2P has never provided information or documents to substantiate its categorical claim that it now disputes *all* amounts for all of UniUni's deliveries, so P2P does not owe UniUni anything for the delivery services provided. Stated plainly, in a bad faith attempt to avoid paying invoices that were undisputed, P2P claimed there were "disputes" as to specific deliveries. Because P2P refused (and continues to refuse) to pay UniUni for its services, UniUni rightfully chose to suspend those services, as it was explicitly authorized to do under the parties' agreement.

While P2P's claims lack merit, there is also no basis for its request for the "extraordinary remedy" of a preliminary injunction. ***Critically***, P2P's stated concern about undelivered packages is now effectively moot because UniUni sent out for delivery, or made available for pickup by P2P, effectively all P2P packages, with the exception of a small number of packages that, in the ordinary course, appear to be lost

11

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

or are undeliverable. Now that the alleged emergency created by P2P's own failure to pay UniUni has dissipated, there is no need for injunctive relief.

P2P's unproven allegations that UniUni is improperly "soliciting" P2P's clients is not enough to support issuing an injunction because the parties' contract does not contain any such prohibition, such as a non-compete or non-solicitation clause. There is no contractual obligation that prevents UniUni from contacting customers, all of whom are well-known in the industry, regarding their logistics and delivery business. P2P also fails to establish that there are trade secrets or confidential information to protect from disclosure, and, in any event, UniUni has not and does not intend to utilize or share any confidential or trade secret information to the extent any such confidential information exists (which UniUni disputes).

Without any credible evidence of ongoing or future harm to confidential information or business goodwill, P2P's allegations of monetary loss cannot establish irreparable harm as a matter of law. P2P falls short, therefore, of satisfying the stringent requirements to grant a preliminary injunction, let alone the exceedingly high burden of establishing the need for a mandatory injunction ordering UniUni to continue providing services to P2P (especially in light of P2P's continued refusal to pay for those services). Because exigent circumstances do not exist, UniUni respectfully requests that the Court deny the request for a preliminary injunction, and lift the Court's current Order granting a temporary restraining order.

**A.     P2P Is Not Likely To Succeed On the Merits.**

While P2P has asserted a variety of causes of action in its Complaint, it bases its request for a preliminary injunction on just two claims: (1) breach of contract; and (2) misappropriation of trade secrets under the California Uniform Trade Secrets Act (CUTSA), California Civil Code § 3426, *et seq*., and the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836. P2P is not likely to succeed on either claim.

**1.     P2P fails to show a likelihood of success on its breach of contract claim.**

12

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Under California law, a claim for breach of contract consists of the following elements: "[1] the existence of the contract, [2] performance by the plaintiff or excuse for nonperformance, [3] breach by the defendant and [4] damages." *See Wacker v. Hammerking Prods. Inc.*, 608 F. Supp. 3d 947, 959 (C.D. Cal. 2022) (citation omitted). "It is well-established at common law that [a] breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011).

Here, P2P has failed to establish the second, third or fourth elements, *i.e.*, that P2P has performed its obligations under the Agreement (*i.e.*, paying required charges), that there is any breach by UniUni, or damages. To the contrary, it is P2P that started this dispute between the parties by, itself, breaching the Agreement by failing to pay UniUni.

Starting in early 2026, P2P began to unreasonably dispute and delay paying UniUni invoices that were due and owing. Wang Decl. ¶ 7. For example, P2P began to accuse UniUni of causing service and billing errors, which allegedly resulted in delivery delays and failures to deliver. *Id.*

From February to April of 2026, UniUni engaged in good faith communications with P2P to address any alleged issues with its service. See *id.* at ¶¶ 8-10, Exs. 1-2. P2P tries to excuse its own breaches for failure to pay by claiming that it disputed at least $800,000 worth of fees for deliveries that P2P claims experienced delays or other problems, and that UniUni acknowledged that this amount was under claims review. *See* Dkt. 6-2 at 8. Tellingly, however, UniUni notified P2P that, while P2P disputed approximately $800,000 of the total outstanding amount, ***at least $400,000 of what P2P owed UniUni was undisputed and had to be paid immediately.*** Wang Decl. ¶ 10, Ex. 2. Thus, even accepting P2P's contemporaneous stated position, it is undisputed that P2P refused to pay "undisputed fees," owed to UniUni, and, thus that

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

P2P, not UniUni, was in breach of the Agreement.[2]

UniUni properly invoked its rights and remedies per the very contract that P2P agreed to, and now seeks to baselessly assert claims under against UniUni. Section 2 of the Agreement expressly permits UniUni to suspend Services if P2P fails to pay any "undisputed fees when due" and that failure continues for ten days following written notice to P2P. Dkt 1-1 at 3.

Here, it is undisputed that P2P did not pay *at least* $400,000 of "undisputed charges," and the $400,000 P2P owed has been unpaid for over 14 days after UniUni provided written notice of the non-payment. Accordingly, P2P materially breached the Agreement, which eliminates UniUni's obligations under the Agreement, and precludes P2P's ability to prevail on its breach of contract claim. *See James River Ins. Co. v. Medolac Lab'ys*, 290 F. Supp. 3d 956, 970 (C.D. Cal. 2018) ("one party's material breach of a contract excuses the other party's duty to perform"); *see also Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) ("a material breach excused further performance by [an] innocent party"). Thus, there is non-performance by P2P, no breach by UniUni, no damages to P2P given that UniUni's conduct is consistent with the Agreement's terms, and the preliminary injunction must be denied.

### 2.    P2P fails to show likelihood of success on its trade secret claims.

P2P's trade secret claims fare no better. "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: (1)

---

[2] It was only later, as the disputes between P2P and UniUni were ripening, that P2P asserted in conclusory fashion that it disputed *all* fees that UniUni had billed P2P. There is nothing in the Agreement that allows for such categorical objection to UniUni's invoices. Instead, the Agreement provides for a process in which P2P could (and did) submit claims for reimbursement or credits for deliveries that experienced problems, including by submitting to UniUni specific information about such deliveries. Dkt. 1-1. at 5; Wang Decl. ¶ 9, Ex. 1. P2P never submitted the information UniUni requested to support its position that it did not owe UniUni anything for the services UniUni provided. Wang Decl. ¶ 9, Ex. 1.

14

the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations and quotation marks omitted). "[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC,* 978 F.3d at 657.

Critically, "[t]o prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist." *Id.* at 658 (quotation marks and citation omitted). Although a plaintiff "need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-01498-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (internal quotation omitted), a plaintiff "should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *InteliClear*, 978 F.3d at 658 (quotation marks and citation omitted) (emphasis in original).

In other words, a plaintiff must describe the trade secret with sufficient particularity to permit the defendant "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted). Identifying trade secrets with sufficient particularity is critically important because defendants need concrete identification to prepare a rebuttal and comply with any court orders. *InteliClear*, 978 F.3d at 658. "[A]llegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as protectable trade secrets are insufficient to state a claim." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) (emphasis in original). Indeed, California, by statute, requires the party alleging misappropriation to first "identify the trade secret with reasonable particularity." Cal Civ. Proc. § 2019.210.

Here, P2P has not demonstrated that there are any trade secrets that could be

15

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

misappropriated. The alleged confidential information P2P relies upon are: (1) customer identities; (2) shipping rates; and (3) shipping guarantees. Dkt. 6-1 at 21, 24. To start, the Agreement defines "confidential information" as including "any information which is confidential in nature or that is treated as being confidential by a party[.]" Dkt. 1-1 at 2. That definition, however, does not apply to (1) information that is or becomes generally available to the public; (2) information that UniUni possessed beforehand; or (3) information that UniUni independently developed without using any confidential information. *Id.* This matters here because UniUni never received any information from P2P that P2P designated and identified as being confidential. Berry Decl. ¶ 5. P2P did not inform UniUni, either verbally or in writing, that the information UniUni received from P2P was proprietary or confidential. *Id.* And the customers with whom both P2P and UniUni do business are among the largest ecommerce and online retailer companies in North America. There is nothing confidential or "secret" about who such customers are, or the business opportunities for companies like P2P and UniUni with such customers.

Notably, the Agreement does not contain a non-competition or non-solicitation provision that prevents UniUni from contacting or soliciting the business of customers in UniUni or P2P's industry, and UniUni has pre-existing business relationships, and/or engaged in business communications with, all the customers it communicated with between April 2026 and May 2026. Berry Decl. ¶ 3. P2P therefore fails to meet its high burden of clearly establishing that the identities of customers rise to the level of trade secrets or confidential information as defined by the Agreement.

Next, UniUni never used any of P2P's "shipping guarantees and shipping timeframes" when soliciting customers. *Id.* ¶ 5. P2P's "shipping rates" and "shipping guarantees" are the type of imprecise, general, and vague assertions that courts have repeatedly found inadequate to support a trade secret claim, much less an entitlement to a preliminary injunction. *See Race Winning Brands, Inc. v. Gearhart*, No. SACV 22-1446-FWS-DFM, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023) (Plaintiff's

16

proffer of a "long list of general areas of information containing unidentified trade secrets" was "not a substitute" for pleading particularized and concrete trade secrets); *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, No. SACV 23-00982-CJC (KESX), 2023 WL 6373884, at \*4 (C.D. Cal. Aug. 24, 2023) (categories such as "information about products and services, markets, customers and prospective customers" "are simply too broad for the Court—or Defendants—to understand what they mean"). P2P relies heavily on an isolated (and partial) e-mail communication between an UniUni sales representative and a purported P2P customer. Dkt. 6-1 at 9-10. However, that communication illustrates the point:  rather than discussing with specificity any supposedly confidential P2P pricing information, the UniUni representative makes the general point that, with P2P as a proverbial "middle man," the customer could achieve savings by working directly with UniUni, and eliminating the marginal fee P2P bills **on top of** UniUni's charges. *Id.*

P2P has not met its burden of demonstrating that it provided any confidential information or trade secrets to UniUni that UniUni is misusing. For this reason, too, the Court should deny P2P's request for a preliminary injunction.[3]

**B.     P2P Fails to Show Irreparable Harm.**

Putting aside the merits, P2P cannot show the irreparable harm required to establish a need for injunctive relief. To show irreparable harm, a moving party must demonstrate "*immediate* threatened injury." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis added). "An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition,*

---

[3] As discussed further, below, in the event that the Court decides to grant injunctive relief, any order providing such relief should identify with specificity the customers and information that is subject to the injunction. UniUni has many long-standing relationships with customers that UniUni does not have any basis to understand are P2P customers. UniUni cannot be prohibited from continuing to do business with and communicating with its own important clients, notwithstanding any claim by P2P that it also may have a relationship with such customers, or that such customers may be a prospective client for P2P.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

17

*Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007). P2P attempts to satisfy this standard by claiming (1) loss of customers and goodwill due to UniUni's alleged failure to deliver its packages; and (2) misappropriation P2P's alleged confidential information. Dkt. 6-1 at 22-23. While both arguments fail on the merits, they also cannot show irreparable harm.

**First**, P2P's concern about undelivered packages is now moot. Even before the Court's June 13th Order, UniUni has been attempting to facilitate the pickup and delivery of all outstanding P2P packages. Wang Decl. ¶¶ 13-17. UniUni has continued in good faith to coordinate with P2P to have all of its Gateway Packages picked up by P2P, and to deliver, as soon as possible, all P2P Downstream Packages to the end-consumers to the extent feasible. *Id.* ¶¶ 14-17. And based on UniUni's records, P2P has picked up all the Gateway Packages, and the Downstream Packages all have been delivered, except for approximately 1,066 that are considered undeliverable or lost. *Id.* at ¶ 16. The alleged emergency resulting from P2P's packages being stuck in UniUni's system is now over. Further, at all times, P2P has had access to the Application Programming Interface (API) shipping network system for package tracking purposes, which has remained fully active and operational. *Id.* at ¶ 17(d).

**Second**, and as discussed above, UniUni is not misusing any of P2P's confidential information. UniUni never received any information from P2P that P2P designated and identified as being confidential. Berry Decl. ¶ 5. P2P did not inform UniUni, either verbally or in writing, that the information UniUni received from P2P was proprietary or confidential. *Id.* UniUni never used any of P2P's "shipping guarantees and shipping timeframes" when soliciting customers. *Id.* UniUni also has pre-existing business relationships with all the customers it contacted from April 2026 to May 2026. Berry Decl. ¶ 4.

With P2P's packages having been delivered, and no evidence of UniUni misappropriating P2P's confidential information, this case becomes a standard breach of contract dispute, which can be resolved through money damages. And it is "well

18

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

established that mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Yamout v. Scapa*, No. CV 24-8876-SVW-PDX, 2024 WL 5185324, at *3 (C.D. Cal. Oct. 22, 2024); *see also Asmoke USA, LLC v. YCY Int'l Logistics, Inc.*, No. SACV2300746CJCADSX, 2023 WL 3768655, at *2 (C.D. Cal. May 1, 2023) (denying injunctive relief because plaintiff did not show a certainty that it will suffer irreparable harm where money damages could make it whole).

Because P2P's packages have been delivered, and UniUni has not misused P2P's confidential information, P2P will not suffer any immediate injury that cannot be resolved through money damages.

### C.    The Equities Favor UniUni.

To qualify for injunctive relief, the movant must establish that "the balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. In assessing whether a party has met this burden, the district court has a "duty ... to balance the interests of all parties and weigh the damage to each." *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). And under Fed. R. Civ. P. 65, an injunction order must "state its terms specifically ... [and] describe in reasonable detail ... the act or acts restrained or required." Fed. R. Civ. P. 65(d). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013); *see also Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1132-33 (9th Cir. 2006) (finding injunction order to be deficient for lack of specificity).

Here, UniUni would suffer substantially more hardship than P2P from an erroneously issued, vague preliminary injunction. Importantly, P2P's requested injunction would prevent UniUni from "unlawfully" soliciting P2P's clients or prospective clients. But as noted above, the Agreement does not contain a non-solicitation or non-compete provision, so there is no basis to prevent UniUni from

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

19

operating its business. The proposed injunction also does not identify **which** clients or prospective clients UniUni is prevented from contacting, or what specific information UniUni cannot use. And as the Ninth Circuit has made clear, "the recipient of a TRO, which usually takes effect immediately, should not be left guessing as to what conduct is enjoined." *Reno Air*, 452 F.3d at 1134.

P2P also ignores that its requested relief would force UniUni to perform services that P2P has repeatedly refused, for months on end, to pay for. Critically, P2P currently owes UniUni significant amounts of money, at least $400,000 of undisputed fees. P2P therefore comes to this court with unclean hands and is not entitled to equitable relief because it caused the purported urgency it complains about by withholding payment from UniUni for delivery services UniUni already provided.

### D.    A Preliminary Injunction Is Not In the Public Interest.

Where a dispute is limited to conduct between the parties, "the public interest will be *at most* a neutral factor[.]" *Stormans, Inc.*, 586 F.3d at 1138-39 (emphasis added). Now that virtually all of P2P's packages have been delivered, there are no third parties with interest in the resolution of the parties' private dispute. Thus, this factor does not weigh in favor of granting an injunction.

### E.    Alternatively, the Court Should Require P2P to Give Security as a Condition of Any Preliminary Injunction.

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Courts dispense with the filing of a bond only when they conclude "there is no realistic likelihood of harm to the defendant" from enjoining its conduct. *Id.* The Court's Order, based on what was before the Court at that time, found no likelihood of harm to UniUni because the TRO would simply enjoin UniUni from doing something it did not have the right to do in the first place. Dkt 28 at 17.

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

First, as explained above, the Agreement does not contain any non-compete or non-solicitation provision preventing UniUni from contacting clients in the parties' industry, including the many customers with which UniUni has long-standing relationships. An injunction therefore presents a substantial risk that UniUni will be prohibited from simply conducting normal business operations, which threatens UniUni's ability to keep its doors open.

Second, as explained above, nothing in the current record establishes that UniUni is disclosing or misusing any alleged confidential information. UniUni never received any information from P2P that P2P designated and identified as being confidential. Berry Decl. ¶ 5. P2P did not inform UniUni, either verbally or in writing, that the information UniUni received from P2P in connection with the Services was proprietary or confidential, and UniUni never used any of P2P's "shipping guarantees and shipping timeframes" when soliciting customers. *Id.* Moreover, because P2P has failed to specifically identify its alleged trade secrets with the required specificity, UniUni is at a loss as to what information it can and cannot use in operating its regular business.

Third, there is a likelihood that UniUni will be required to provide future services to P2P, effectively, for free. It is undisputed that P2P owes UniUni at least $400,000, and the Agreement expressly allows UniUni to suspend services if undisputed fees are not timely paid. But the Court's Order required UniUni to continue to provide services to P2P with no indication that UniUni will receive payment for those services, and preliminary injunctive relief will only worsen such harm to UniUni.

In light of the substantial risk of harm to UniUni's business resulting from the TRO, the Court should at a minimum require P2P to immediately pay all undisputed payments due and owing to UniUni (at least $400,000), as well as all costs that would be incurred by UniUni by performing services for P2P as requested by the injunction, in an amount to be calculated and provided to the Court if necessary.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

21

## **CONCLUSION**

For the foregoing reasons, the Court should deny P2P's request for a preliminary injunction and dissolve the temporary restraining order issued on June 12, 2026.

DATED:  June 17, 2026                                **BALLARD SPAHR LLP**


*/s/ Scott S. Humphreys*
_____
                                                 Scott Humphreys

                                          Attorney for Defendant
                                          UNIUNI LOGISTICS INC.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

22

DEFENDANT UNIUNI LOGISTICS INC.'S OPPOSITION TO PRELIMINARY INJUNCTION